UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

ELMER VAUGHN H.,

               Plaintiff,

    v.

COMMISSIONER OF SOCIAL SECURITY,

               Defendant.

Case No. C18-5692 MLP

ORDER REVERSING AND
REMANDING FOR FURTHER
PROCEEDINGS AT STEP FIVE

## I.      INTRODUCTION

Plaintiff seeks review of the denial of his application for Supplemental Security Income and Period of Disability and Disability Insurance Benefits. Plaintiff contends the administrative law judge ("ALJ") erred by failing to perform a function-by-function assessment required by SSR 96-8p, failing to provide a substantial reason for rejecting multiple examinations, using a variation on the improper "sit and squirm" test, finding Plaintiff's activities of daily living disqualified him from being found disabled, failing to give legally proper reasons for rejecting evidence from two lay witnesses, and failing to properly establish at Step Five of the sequential evaluation process that jobs existed in significant numbers that were consistent with the Residual Functional Capacity ("RFC"). (Dkt. # 12 at 1-2.) As discussed below, the Court REVERSES the

Commissioner's final decision and REMANDS the case for further administrative proceedings under 42 U.S.C. § 405(g).

## II.    BACKGROUND

Plaintiff was born in 1982, has a GED, and has worked as a fisherman, steelworker, and millwright. AR at 274, 299. Plaintiff was last gainfully employed in 2011. *Id.* at 299.

On July 3, 2014, Plaintiff applied for benefits, alleging disability as of March 1, 2011.[1] AR at 597. Plaintiff's applications were denied initially and on reconsideration, and Plaintiff requested a hearing. *Id.* at 350. After the ALJ conducted hearings on December 15, 2016, May 31, 2017, and on June 23, 2017, the ALJ issued a decision finding Plaintiff not disabled. *Id.* at 15-43.

Utilizing the five-step disability evaluation process,[2] the ALJ found:

Step one: Plaintiff engaged in substantial gainful activity as of July 3, 2014. [3]

Step two: Plaintiff has the following severe impairments: degenerative disc disease of the cervical and thoracic spine; bilateral carpal tunnel syndrome, status post right carpal tunnel release surgery; degenerative joint disease of the right knee, status post arthroscopy; anxiety disorder; depressive disorder; personality disorder; intermittent explosive disorder; cannabis use disorder; opioid dependence; and methamphetamine dependence.

---

[1] Plaintiff initially alleged disability as of March 1, 2012, but later amended his onset date to March 1, 2011. AR at 561, 565. His date last insured is December 31, 2011. *Id.* at 598.

[2] 20 C.F.R. §§ 404.1520, 416.920.

[3] With regard to Plaintiff's claim of disability under Title II, the ALJ found Plaintiff engaged in substantial gainful activity ("SGA") in 2011 because his earnings as a deckhand exceeded the presumptive threshold for SGA, and therefore denied Plaintiff's claim for period of disability and disability insurance benefits at step one. AR at 21. The ALJ further found that with regard to his Title XVI claim, Plaintiff engaged in SGA as of July 3, 2014. *Id.* at 21-22. Illegal activity can qualify as substantial gainful activity. 20 C.F.R. §§ 404.1571, 416.971. Plaintiff testified during the May 2017 hearing that he worked as a heroin dealer for one year. AR at 135. Specifically, Plaintiff testified that he purchased heroin from his dealer for $5.00 per 1/10th a gram and then sold the heroin to others for $15.00 per 1/10th of a gram, and that he gave his dealer a portion of his profits daily, typically at least $100.00 of profit. *Id.* at 134-35. From this testimony, the ALJ inferred Plaintiff's drug sales constituted SGA level income. *Id.* at 22. Although the ALJ's inference may be correct, it is unnecessary for this Court to determine whether the ALJ's inference was rational because the ALJ alternatively completed the sequential evaluation process. *Id.*

Step three: These impairments do not meet or equal the requirements of a listed impairment.[4]

Residual Functional Capacity: Plaintiff can perform light work with the following exceptions: he can frequently stoop and climb ramps or stairs. He can occasionally kneel, couch, crawl, and climb ladders, ropes, or scaffolds. He can frequently handle and finger bilaterally. He can have occasional exposure to excess vibration and atmospherics (as defined in the DOT). He can never have exposure to hazardous machinery and unprotected heights. He can perform uncomplicated, routine tasks with a reasoning level no greater than 2. He can have seldom interaction with the public (defined as less than 1% of the workday or eight repetitions maximum). He can have occasional interaction with co-workers that does not require performing tandem tasks.

Step four: Plaintiff cannot perform past relevant work.

Step five: As there are jobs that exist in significant numbers in the national economy that plaintiff can perform, plaintiff is not disabled.

*Id.* at 21-42.

As the Appeals Council denied Plaintiff's request for review, the ALJ's decision is the Commissioner's final decision. AR at 1-6. Plaintiff appealed the final decision of the Commissioner to this Court. (Dkt. # 4.)

## III.   LEGAL STANDARDS

Under 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005). As a general principle, an ALJ's error may be deemed harmless where it is "inconsequential to the ultimate nondisability determination." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (cited sources omitted). The Court looks to "the record as a whole to determine whether the error alters the outcome of the case." *Id.*

---

[4] 20 C.F.R. Part 404, Subpart P. Appendix 1.

"Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id.*

## IV.    DISCUSSION

### A.    The ALJ Did Not Err in Discounting Plaintiff's Symptom Testimony

#### 1.    Legal Standards for Evaluating Plaintiff's Testimony

It is the province of the ALJ to determine what weight should be afforded to a claimant's testimony, and this determination will not be disturbed unless it is not supported by substantial evidence. A determination of whether to accept a claimant's subjective symptom testimony requires a two-step analysis. 20 C.F.R. §§ 404.1529, 416.929; *Smolen*, 80 F.3d at 1281. First, the ALJ must determine whether there is a medically determinable impairment that reasonably could be expected to cause the claimant's symptoms. 20 C.F.R. §§ 404.1529(b), 416.929(b); *Smolen*, 80 F.3d at 1281-82. Once a claimant produces medical evidence of an underlying impairment, the ALJ may not discredit the claimant's testimony as to the severity of symptoms solely because they are unsupported by objective medical evidence. *Bunnell v. Sullivan*, 947 F.2d 341, 343 (9th Cir. 1991) (en banc); *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1988). Absent affirmative evidence showing that the claimant is malingering, the ALJ must provide "clear and convincing"

reasons for rejecting the claimant's testimony. *Burrell v. Colvin*, 775 F.3d 1133, 1136-37 (9th Cir. 2014) (citing *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012)). *See also Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007).

When evaluating a claimant's subjective symptom testimony, the ALJ must specifically identify what testimony is not credible and what evidence undermines the claimant's complaints; general findings are insufficient. *Smolen*, 80 F.3d at 1284; *Reddick*, 157 F.3d at 722. The ALJ may consider "ordinary techniques of credibility evaluation," including a claimant's reputation for truthfulness, inconsistencies in testimony or between testimony and conduct, daily activities, work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the alleged symptoms. *Thomas*, 278 F.3d at 958-59 (citing *Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997)).

2. *The ALJ Provided Several Clear and Convincing Reasons for Discounting Plaintiff's Testimony*

Plaintiff argues the ALJ erred in evaluating his testimony regarding his activities of daily living. (Dkt. # 12 at 1.) Plaintiff did not challenge any of the ALJ's other reasons for discrediting his testimony. Specifically, the ALJ gave the following reasons for discounting Plaintiff's allegations: (1) Plaintiff testified that he worked as a heroin dealer for one year while earning SGA level of income; (2) Plaintiff made numerous inconsistent statements regarding his ongoing drug abuse; (3) the record shows Plaintiff exaggerated the severity of his mental health symptoms and functioning; (4) the record shows Plaintiff exaggerated the severity of his physical symptoms and functioning; and (5) the record shows Plaintiff demonstrated a level of physical functioning in his personal life in excess of his claimed limitations. AR at 34-36.

### a. Inconsistent Statements

The reasons given by the ALJ for discounting Plaintiff's symptom testimony were clear, convincing, and supported by substantial evidence. The ALJ noted inconsistent statements made by Plaintiff in the record regarding his substance abuse. AR at 34. For example, in 2014, Plaintiff reported that he had not used marijuana or cocaine in the last 10-12 years. *Id.* at 1000. However, in 2015, Plaintiff denied ever using cocaine, despite having previously reported cocaine use. *Id.* at 1107. Plaintiff also reported that his primary care provider was aware that he was injecting his oxycodone prescriptions (AR at 1211), yet records from his primary care provider show the prescription was for oral oxycodone tablets and there is no indication his provider knew Plaintiff was injecting his medication (AR at 1305-1372). Inconsistent statements regarding drug use are a clear and convincing reason to discount a claimant's credibility. *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (upholding adverse credibility determination where claimant had "present[ed] conflicting information about her drug and alcohol use"). The ALJ could reasonably conclude that Plaintiff's inconsistent accounts concerning his substance abuse undermined his testimony.

Although the ALJ cited to some records that are not necessarily inconsistent (AR at 900, 1023, 1062, 1107, 1183, 1355), this was harmless error given the other inconsistent statements cited, in addition to the other reasons the ALJ provided for discounting Plaintiff's testimony. *See Carmickle v. Comm'r of Social Sec. Admin.*, 533 F.3d 1155, 1162-63 (9th Cir. 2008).

### b. Exaggeration of the Severity of Mental Health Impairments

The ALJ also discounted Plaintiff's testimony because the record contained evidence that Plaintiff exaggerated the severity of his mental impairments. Specifically, one of Plaintiff's evaluating doctors, Dr. Kruger, noted multiple questionable inconsistencies during his June 2015

DSHS psychological evaluation. AR at 35. For example, Plaintiff changed his claim of seeing visions just in the corner of his eyes to seeing actual forms, and changed his claim of hearing just whispers to having hallucinations that lasted all day. *Id.* at 1107. Significantly, Dr. Kruger found that Plaintiff's score on the M-FAST was "fairly strong" evidence of malingering and that his presentation of his impairments appeared to be exaggerated. *Id.* An ALJ may permissibly rely on evidence of exaggeration as diminishing the credibility of a claimant's complaints. *See Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001). Here, the ALJ could reasonably rely on this evidence of exaggeration in assessing the severity of Plaintiff's mental health functioning. This was a clear and convincing reason for the ALJ to give Plaintiff's testimony less weight.

### c. Exaggeration of the Severity of Physical Impairments

The ALJ also found that Plaintiff exaggerated the severity of his physical impairments, specifically his need to use a neck collar and cane. AR at 35. During the December 2016 hearing, Plaintiff testified that he had been wearing a neck brace since 2014 to stabilize his neck so that his arms are not numb, giving him better mobility. *Id.* at 75. Plaintiff also wore the neck brace to the May 2017 hearing and testified that he was prescribed the neck brace to use when he "felt it necessary to keep things from progressing." *Id.* at 129, 154. Plaintiff also testified at that hearing that he uses a cane when he takes trips away from his house. *Id.* at 160.

The ALJ found Plaintiff spontaneously started wearing the neck brace to his primary care visits in 2016, citing several medical records noting the appearance of the brace, and found a lack of evidence that he wore it prior to that period. AR at 35. The ALJ also found no evidence in the record of Plaintiff using a cane. *Id.* at 35-36. Further, the ALJ noted that Plaintiff was not wearing a neck brace or using a cane when he was interviewed by Cooperative Disability Investigation Unit ("CDIU") Detective McMullen. *Id.* Lastly, the ALJ examined CDIU

surveillance video of Plaintiff's interview with Detective McMullen and observed Plaintiff's range of motion of his neck. *Id.* at 36. The ALJ found Plaintiff "appeared pain free in his various friendly gesticulations and turn about. He had no problem exceeding by a large measure the restrictive affect of hearing." *Id.* The ALJ found this to be in contrast to the range of motion Plaintiff presented at the ALJ hearings and concluded Plaintiff's pain and physical limitations were exaggerated. *Id.* The ALJ could reasonably discredit Plaintiff's symptom testimony given that evidence of exaggeration regarding his physical functioning. This was a clear and convincing reason for the ALJ to give Plaintiff's testimony less weight.

### d. Level of Physical Functioning

Daily activities can form the basis for discrediting a claimant's testimony if they contradict the testimony. *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). The ALJ noted that the record described Plaintiff's participation in certain physical activities that undermine his allegations of disability: managing self-care, cooking, maintaining a generator, and fetching water when living "off the grid" in a trailer. AR at 36. Plaintiff argues that his activities do not rise to a level to disqualify him from being found disabled because he alleges they do not show he has the ability to work on a regular and continuing basis as defined in SSR 96-8p. (Dkt. # 12 at 12.) Plaintiff's argument is not persuasive. The ALJ could reasonably find that Plaintiff's daily activities contradicted the severity of functional limitations alleged by Plaintiff, and, accordingly, consider his level of physical functioning in evaluating Plaintiff's subjective complaints regarding his alleged impairments. Because the record supports that Plaintiff could perform many daily activities that belied his complaints about the severity of his impairments, the ALJ's assessment is supported by sufficient evidence and the ALJ's reasons for discounting Plaintiff's testimony are clear and convincing.

As noted above, the Court does not need to determine whether Plaintiff's drug selling activities were profitable enough to constitute SGA, however, the ALJ could properly consider these activities in assessing Plaintiff's claims of disability. One factor relevant to the credibility analysis is inconsistencies either in allegations of limitations or between statements and conduct. *Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997). The ALJ found Plaintiff's activity contradicted his claims of significant cognitive and social deficits as he "presumably had to exercise some level of cognitive effort and interact with people in his selling endeavors." AR at 34. Plaintiff's argument that there is nothing in the record regarding how often or long Plaintiff engaged in his activity, and that he did not make as much money as the ALJ found, fails. (Dkt. # 12 at 4.) Plaintiff testified as to the frequency and length of his activity and his typical profits. AR 134-35. Plaintiff has therefore not shown that the ALJ erred in considering his work as a heroin dealer in evaluating his testimony.

Accordingly, the ALJ properly identified several clear and convincing reasons, supported by substantial evidence, for giving Plaintiff's testimony less weight. Because the ALJ provided multiple legally sufficient reasons to discount Plaintiff's testimony, this part of the ALJ's decision is affirmed.

## B.    The ALJ Did Not Err in Evaluating Medical Opinions

As a matter of law, more weight is given to a treating physician's opinion than to that of a non-treating physician because a treating physician "is employed to cure and has a greater opportunity to know and observe the patient as an individual." *Magallanes*, 881 F.2d at 751; *see also Orn*, 495 F.3d at 631. A treating physician's opinion, however, is not necessarily conclusive as to either a physical condition or the ultimate issue of disability, and can be rejected, whether or not that opinion is contradicted. *Magallanes*, 881 F.2d at 751. If an ALJ rejects the opinion of

a treating or examining physician, the ALJ must give clear and convincing reasons for doing so if the opinion is not contradicted by other evidence, and specific and legitimate reasons if it is. *Reddick*, 157 F.3d at 725. "This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id.* (citing *Magallanes*, 881 F.2d at 751). The ALJ must do more than merely state his/her conclusions. "He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Id.* (citing *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)). Such conclusions must at all times be supported by substantial evidence. *Reddick*, 157 F.3d at 725.

The opinions of examining physicians are to be given more weight than non-examining physicians. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Like treating physicians, the uncontradicted opinions of examining physicians may not be rejected without clear and convincing evidence. *Id.* An ALJ may reject the controverted opinions of an examining physician only by providing specific and legitimate reasons that are supported by the record. *Bayliss,* 427 F.3d at 1216.

### 1.     Dr. Brenda Grant, M.D.

Treating physician Dr. Grant conducted a physical evaluation and completed a Physical Residual Functional Capacity Questionnaire in May 2016. AR at 1113-16, 1131-36. Dr. Grant found, *inter alia*, that Plaintiff is unable to sustain even sedentary work due to his mental and physical conditions, has marked to severe limitations with performing basic work activities, can only sit for fifteen minutes at one time and stand/walk for a total of less than two hours in a workday, can never look down, turn his head from right to left or look up, and that he is incapable of performing even "low stress jobs." *Id.* at 1132-35.

1    The ALJ gave Dr. Grant's opinion little to no weight because it is "grossly inconsistent

2    with the overall medical evidence of record." AR at 39. Specifically, the ALJ found her opinion

3    to be inconsistent with her treatment history of Plaintiff, her benign examination findings,

4    Plaintiff's unremarkable imaging studies and conservative treatment history, Plaintiff's minimal

5    mental health treatment history, and Plaintiff's performances during psychological evaluations

6    and treatment visits. *Id.* Plaintiff argues the ALJs assessment failed to address mild to moderate

7    diagnostic imaging results. (Dkt. # 12 at 10.). However, the ALJ gave a detailed summary of

8    Plaintiff's clinical treatment record, which included Plaintiff's diagnostic imaging results. AR at

9    26-33. The ALJ gave specific and legitimate reasons for discounting Dr. Grant's opinion.

10   Inconsistency with the medical record is a specific and legitimate reason to discount Dr. Grant's

11   opinion. *See Batson v Comm'r of Soc. Sec. Admin*, 359 F.3d 1190, 1195 (9th Cir. 2004).

12           Plaintiff alleges the ALJ erred in finding Plaintiff's activities of daily living demonstrates

13   he has a physical and mental function in excess of Dr. Grant's assessment. (Dkt. # 12 at 10.) As

14   discussed above, the record shows Plaintiff managed self-care, cooked, maintained a generator,

15   fetched water when living "off the grid" in a trailer, and sold drugs. The ALJ could reasonably

16   conclude these activities contradicted Dr. Grant's opinion regarding Plaintiff's limited movement

17   of his neck, ability to handle even low-stress jobs, and his limitations in standing and walking.

18   Inconsistencies with Plaintiff's daily activities of living was a specific and legitimate reason to

19   discount Dr. Grant's opinion. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008);

20   *Morgan v. Comm'r Soc. Sec. Admin.*, 169 F.3d 595, 601 (9th Cir. 1999).

21           Accordingly, the ALJ properly identified several specific and legitimate reasons,

22   supported by substantial evidence, for giving Dr. Grant's opinion little to no weight.

23

### 2.    Dr. Tasmyn Bowes, Psy.D.

Dr. Bowes conducted a consultative psychological examination describing Plaintiff's limitations in September 2014. AR at 1029-39. She performed a range of testing and conducted a clinical interview. *Id.* Plaintiff provided all the information for the interview and Dr. Bowes also reviewed case notes from Heather Latham, ARNP, and Plaintiff's SSA Form 3368. *Id.* at 1030. Dr. Bowes opined that Plaintiff is: (1) moderately impaired in his ability to maintain his attention and focus on tasks; (2) markedly impaired in his ability to get along with coworkers or supervisors and would not be fit for any work that involved interaction with the public; (3) markedly impaired in his ability to concentrate and focus on task to competition; and (4) markedly impaired in his ability to persist through an eight hour week day in a full time job. *Id.* at 1036. She further opined that Plaintiff would have difficulty learning new tasks and completing tasks without supervision. *Id.*

The ALJ discussed Dr. Bowes opinion in detail and provided several specific and legitimate reasons to assign her opinion little weight. AR at 37-38. The ALJ found Dr. Bowes opinion was not consistent with the record, Plaintiff's mental health treatment history, performance on the evaluations and other psychological evaluations, his ability to engage in selling drugs, and his ability to perform activities of daily living independently while living in a trailer. *Id.* at 38. The ALJ also found Plaintiff made false statements about his ongoing drug abuse. *Id.*

As discussed above, the ALJ gave a detailed summary of the medical evidence in the record. Inconsistencies between Dr. Bowes' opinion and the medical evidence was a specific and legitimate reason to discount her opinion. Similarly, the ALJ could reasonably find Dr. Bowes'

opinion regarding the severity of Plaintiff's limitations was inconsistent with the level of his daily activities of living.

Plaintiff argues that the ALJ failed to show how Plaintiff's false statements regarding his drug use influenced Dr. Bowes opinion. Here, Plaintiff provided all the information for the clinical interview. An opinion may be entitled to less weight if it is made without knowledge of a claimant's substance abuse. *See Coffman v. Astrue*, 469 Fed.Appx. 609, 611 (9th Cir. 2012) (affirming ALJ's rejection of examining psychologist's opinion, in part, due to the fact that "plaintiff periodically concealed" his substance abuse from providers); *Serpa v. Colvin*, 2013 WL 4480016, *8 (E.D. Wa., Aug. 19, 2013) (affirming ALJ's rejection of a physician's opinion because it was made without knowledge of the claimant's substance abuse and narcotic-seeking behavior). Even if Plaintiff's false statements regarding his drug use did not influence Dr. Bowes' opinion, it is harmless error given the other specific and legitimate reasons provided by the ALJ. *See Carmickle*, 533 F.3d at 1162-63.

Because the ALJ provided multiple legally sufficient reasons to discount the medical opinions of Dr. Grant and Dr. Bowes, this part of the ALJ's decision is affirmed. [5]

### C.    The ALJ Did Not Err in Discounting Lay Witnesses

In order to determine whether a claimant is disabled, an ALJ may consider lay-witness sources, such as testimony by nurse practitioners, physicians' assistants, and counselors, as well as "non-medical" sources, such as spouses, parents, siblings, and friends. *See* 20 C.F.R. § 404.1527(f). Such testimony regarding a claimant's symptoms or how an impairment affects his/her ability to work is competent evidence, and cannot be disregarded without comment.

---

[5] Plaintiff also asserts an argument regarding the ALJ's assessment of Dr. Krueger's opinion for the first time in his reply. (Dkt. # 20 at 6-10.) Because Plaintiff did not raise this argument in his opening brief, it is waived. *See Bray v. Commissioner of Social Security Admin.*, 554 F.3d 1219, 1226, n. 7 (finding an argument not raised in the plaintiff's opening brief was deemed waived).

*Dodrill v. Shalala*, 12 F.3d 915, 918-19 (9th Cir. 1993). This is particularly true for such non-acceptable medical sources as nurses and medical assistants. *See* Social Security Ruling ("SSR") 06-03p (noting that because such persons "have increasingly assumed a greater percentage of the treatment and evaluation functions previously handled primarily by physicians and psychologists," their opinions "should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file."). If an ALJ chooses to discount testimony of a lay witness, he must provide "reasons that are germane to each witness," and may not simply categorically discredit the testimony. *Dodrill,* 12 F.3d at 919.

### 1. Heather Latham, ARNP

Heather Latham, ARNP, conducted a DSHS physical evaluation of Plaintiff in July 2014. AR at 1121-23. She opined Plaintiff is able to do sedentary work due to physical conditions, and that his limitations would last one to three months. *Id.* The ALJ gave Ms. Latham's opinion little weight because it was inconsistent with the medical evidence and findings in the record, inconsistent with Plaintiff's ability to perform daily living activities, and had limited probative value since it is only for a period of one to three months. *Id.* at 37. Plaintiff argues the ALJ's finding ignores the EMG report of moderate bilateral CTS and that surgery has been discussed. (Dkt. 12 at 8.) Plaintiff further argues that the fact he can use his hands does not mean that the CTS condition "does not have an impact on [him]." (*Id.*)

The ALJ concluded Ms. Latham's opinion that Plaintiff could only do sedentary work was inconsistent with the medical evidence, including her own findings which included, *inter alia*, that he was in "no apparent distress," had "other insignificant finds," she "doubt[ed] that he will need surgical intervention," and that she "highly recommend[ed] a formal trial of PT before any surgery is done." AR at 26-33, 1023-24. The ALJ gave a detailed summary of Plaintiff's

medical treatment earlier in the decision, which specifically addressed that Plaintiff underwent surgery for his carpal tunnel syndrome and included other records that are inconsistent with Ms. Latham's opinion. *Id.* 26-33. The inconsistencies between Ms. Latham's opinion and the medical evidence was a germane reason to discredit her opinion. *Baylis,* 427 F.3d at 1218 ("inconsistency with medical evidence" is a germane reason for discrediting lay testimony) (*citing Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001)).

Similarly, the inconsistencies between Ms. Latham's opinion and Plaintiff's activities of daily living, which includes living "off the grid," was a germane reason to discredit her opinion. *See Carmickle*, 533 F.3d at 1164 (inconsistency between a claimant's activities and a lay witness's statements is a germane reason to reject the lay testimony.) Although the ALJ listed Plaintiff's activity of dealing heroin as a reason to discount Ms. Latham's opinion, and the evidence shows Plaintiff may not have been selling drugs in 2014 when the evaluation was conducted (dkt. # 20 at 4-5), this was harmless error in light of the other germane reasons the ALJ provided for discounting her opinion. *See Carmickle*, 533 F.3d at 1162-63.

Lastly, the ALJ reasonably discounted Ms. Latham's opinion on the grounds that the limitations were only expected to impair work activities for one to three months. *See Carmickle*, 533 F.3d at 1165 (affirming the ALJ's decision to give little weight to a treating physician's opined limitation, when the physician gave the plaintiff a two-week excuse from work due to degenerative disc disease, and two months later released the plaintiff to return to full-time work). Plaintiff does not, therefore, demonstrate error in the ALJ's consideration of Ms. Latham's opinion.

Accordingly, the ALJ properly identified several germane reasons for discounting Ms. Latham's opinion.

2.      *Plaintiff's Mother and Father*

The record contains testimony from Plaintiff's mother and a statement from his father. His mother testified at the May 31, 2017 ALJ hearing. AR at 167- 85. She testified that Plaintiff struggles with household activities due to pain in his hands, neck, and knee, that he wears a neck brace and periodically uses a cane, and that he passes out randomly. *Id.* at 172-76, 181. Plaintiff's father submitted a statement in December 2016. *Id.* at 687. He stated his son has "bad days," experiences issues with his neck and hands, has trouble completing household activities, is in pain, wears a neck brace, has trouble holding items, passes out, and is depressed, anxious, and very angry. *Id.*

The ALJ considered Plaintiff's mother's testimony but gave it little weight. AR at 36, 37. The ALJ found that her testimony was not consistent with the evidence in the record regarding Plaintiff's ability to perform activities of daily living. *Id.* at 36. The ALJ also found that while her testimony regarding Plaintiff's personality changes when using drugs could be accurate, Plaintiff acted appropriately with medical and mental health professions and presumably people to whom he sold drugs. *Id.* 36-37. The ALJ also found her testimony regarding Plaintiff's use of a neck brace and cane was not supported by the record. *Id.* at 37. Lastly, the ALJ noted she was unaware of Plaintiff's drug dealing even though it was presumably occurring out of her home. *Id.*

Similarly, the ALJ considered Plaintiff's father's statement but gave it little weight. *Id.* at 40. The ALJ found his statement inconsistent with Plaintiff's benign imaging studies, conservative treatment history, and evidence which indicates his pain is increased by chronic opioid use. *Id.* The ALJ also found the statements regarding Plaintiff's mental health "questionable" because Plaintiff was using and selling drugs, had benign mental health treatment history, and was able to engage appropriately with medical and mental health professionals. *Id.*

The ALJ also found Plaintiff's father's statement inconsistent with the evidence in the record regarding Plaintiff's ability to perform activities of daily living. *Id.* Lastly, the ALJ noted that, similar to Plaintiff's mother, Plaintiff's father was unaware that he dealt drugs out of his home and that there is strong evidence that Plaintiff "would have intentionally had to misrepresent his capabilities to his family in order to justify his presence in the home." *Id.*

As discussed above, inconsistencies with the medical record and Plaintiff's activities of daily living are germane reasons for discrediting lay witness testimony. *Baylis,* 427 F.3d at 1218; *Carmickle*, 533 F.3d at 1164. Further, the fact that both Plaintiff's mother and father did not know about Plaintiff's drug dealing from their home, which the ALJ concluded demonstrated Plaintiff's ability to function was greater than his allegations, is a germane reason to discount their testimony.

Accordingly, the ALJ properly identified several germane reasons for discounting the testimony and statement of Plaintiff's mother and father. Because the ALJ provided multiple legally sufficient reasons to discount the opinion and testimony of lay witnesses, this part of the ALJ's decision is affirmed

### D.     The ALJ Did Not Err in Evaluating Detective McMullen's Testimony

The CDIU conducted an investigation in this matter. AR at 1517-26. During the June 23, 2017 ALJ hearing, Detective McMullen, the investigating officer, testified about his observations of Plaintiff and his interview of two store employee witnesses. *Id.* at 193-233. The ALJ gave Detective Mullen's testimony and the third-party observations great weight. *Id.* at 37. Plaintiff argues the ALJ erred in rejecting a sworn statement by the store owner that none of her employees talked with an investigator. (Dkts. ## 12 at 10-12, 20 at 8-9.) Plaintiff also argues that the ALJ conducted an improper variation of a sit and squirm test by substituting his own opinion

of what appeared on the CDIU surveillance video of Plaintiff's interaction with Detective

McMullen for the observations of Detective McMullen. (*Id.*)

With regard to the witness interview, the Court does not find Plaintiff's argument

persuasive. The ALJ found there was no reason to believe Detective McMullen lied about

speaking to store employees. AR at 40. "If the evidence admits of more than one rational

interpretation," the Commissioner's decision must be upheld. *Allen v. Heckler*, 749 F.2d 577, 579

(9th Cir. 1984) ("Where there is conflicting evidence sufficient to support either outcome, we

must affirm the decision actually made.") (quoting *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th

Cir. 1971)). Further, the ALJ did "not overly rel[y] upon the statements of third parties" and did

not find it helpful in assessing Plaintiff's RFC. AR at 40.

An ALJ may not employ a "sit and squirm" test and reject a claimant's symptom

testimony based solely on the failure to exhibit alleged symptoms at hearing. *Perminter v.

Heckler*, 765 F.2d 870, 872 (9th Cir. 1985). However, the inclusion of an ALJ's observations

does not render the decision improper. *See Verduzco v. Apfel*, 188 F.3d 1087, 1090 (9th Cir.

1999); *Morgan.*, 169 F.3d at 600. Personal observations may be included as part of the overall

evaluation, *Orn*, 495 F.3d at 639-40. "Where… the ALJ has made specific findings justifying a

decision to disbelieve an allegation… and those findings are supported by substantial evidence in

the record, our role is not to second-guess that decision." *Id.* (citing *Fair v. Bowen*, 885 F.2d 597,

603 (9th Cir. 1989). Here, the ALJ viewed the surveillance video himself and observed

Plaintiff's interaction with the detective. The ALJ found Plaintiff showed "full affect and full

mobility of hands, reach, and neck," which contrasted greatly with his presentation at the

hearings where "[Plaintiff] claimed 'looking down' at his lap would cause a loss of

consciousness." *Id.* at 40. Further, contrary to Plaintiff's assertion that "[t]here is no

acknowledgment by the ALJ of the testimony of Officer McMullen" that Plaintiff had to stop

and rest his hands during the interview, the ALJ specifically addressed this testimony, stating:

> [Detective McMullen's] recollection as to the claimant needing a break because the claimant's hand was tired does not appear to be supported in the DVD. Instead, there are frequent breaks, but they appear to be based up on the claimant's jovial conversation and the need to gesture in some direction or the other. The DVD speaks for itself in that it is an objective observation, untainted by memory errors or subsequent investigations that may have different facts.

*Id.* at 37. Considering the decision and record as a whole, including the surveillance video, the

inclusion of the ALJ's observations was properly included as part of the overall evaluation and

does not render the decision improper.

Thus, because the ALJ provided multiple legally sufficient reasons in giving Detective

McMullen's testimony great weight, and the ALJ did not conduct an improper variation of the sit

and squirm test, this part of the ALJ's decision is affirmed.

### E.  The ALJ Did Not Err in Failing to Perform a Function-By-Function Assessment

The ALJ found Plaintiff had the RFC to perform "light work as defined in 20 CFR

404.1567(b) and 416.967(b)." AR at 24. Plaintiff contends the ALJ committed legal error by

failing to perform a function-by-function assessment of his ability to "sit, stand or walk" in

determining his RFC, as required by SSR 96-8p. (Dkt. # 12 at 5.) Plaintiff points to Ms.

Latham's rating of Plaintiff's physical abilities at the sedentary level, which Plaintiff argues is

inconsistent with the ALJ's assessment that Plaintiff can perform light work. *Id.* The ALJ need

not perform a function-by-function analysis for impairments the ALJ "found neither credible nor

supported by the record." *Bayliss*, 427 F.3d at 1217. As discussed above, the ALJ reasonably

rejected Ms. Latham's opinion as well as Plaintiff's subjective testimony regarding the severity

of his physical impairments. Accordingly, the ALJ was not required to perform a function-by-

function assessment with regard to Plaintiff's ability to sit, stand, or walk. Additionally, the

definition of "light work" encompasses the level of siting, standing, and walking required. *See* SSR-83-10, *available at* 1983 WL 31251, at *5-6. (SSR 83–10 provides that the full range of light work requires the ability to stand or walk for approximately six hours in an eight-hour workday. Thus, by finding Plaintiff capable of light work, the ALJ in effect found Plaintiff was able to stand or walk for this length of time.)

The ALJ did not err in failing to perform a function-by-function assessment, and therefore this part of the ALJ's decision is affirmed.

### F. The ALJ Erred at Step Five

The ALJ relied on a vocational expert's ("VE") testimony to find Plaintiff could perform two light jobs and two sedentary jobs that existed in significant numbers in the national economy. AR at 42. During the hearing, the VE testified that he was providing evidence about job numbers for groups of jobs that are consistent with the exertional and skill level articulated in the hypothetical question given by the ALJ. *Id.* at 255. The VE provided the following job numbers for the national and regional economies:

| | |
|---|---|
| Inspector and Hand Packager: | 131,000 US; 2,600 WA |
| Production Assembler: | 227,000 US; 3,500 WA |
| Masker: | 6,000 US; 200 WA |
| Table Worker: | 13,500 US; 300 WA |

*Id.* at 245, 259. Relying on the VE's testimony and the record at the time, the ALJ properly determined there were jobs that existed in significant numbers in the national economy.

After the June 2017 hearing, Plaintiff objected to the VE's testimony, arguing it was improper for the VE to provide job numbers for groups of jobs rather than discrete occupations.[6] AR at 734-35. Plaintiff later submitted a declaration by VE Joseph A. Moisan, Ed.D. to the Appeals Council, who included the declaration in the record but declined Plaintiff's request for review. *See id.* at 1-6, 772-81. VE Moisan's declaration states that within the groups of jobs identified by the VE, there are jobs that have a range of exertional levels and skill levels. *Id.* at 773. The declaration also states that VE Moisan uses a different method for producing job numbers than the VE, specifically a program called Job Browser Pro. *Id.* at 775. Using that program, VE Moisan provided the following job numbers for the discrete occupations identified at the hearing:

| | |
|---|---|
| Inspector and Hand Packager: | 2,030 US; 46 WA |
| Production Assembler: | 693 US; 6 WA |
| Masker: | 4 US; 0 WA |
| Table Worker: | 2,864 US; 65 WA |

*Id.*

Plaintiff argues that the testifying VE's testimony regarding groups of jobs, rather than discrete occupations, did not meet the requirements of 20 C.F.R. §§ 404.1566, 416.966. (Dkts. ## 12 at 15, 20 at 3.) Plaintiff also argues the groups of jobs identified by the VE contain jobs with varying exertional and skill levels, as asserted in VE Moisan's declaration. (Dkt. # 12 at 16.) The Commissioner argues the VE was not required to identify job numbers for discrete jobs,

---

[6] Plaintiff also appears to argue that the ALJ erred in denying his request for a subpoena *duces tecum*. (Dkt. # 12 at 14.) However, the ALJ notified Plaintiff about the denial in writing (AR at 15-16) and there is nothing that indicates the ALJ abused his discretion in denying Plaintiff's request for a subpoena. *See* Commissioner's Hearing, Appeals, and Litigation Law Manual 1-2-5-78.

and that any potential error associated with finding the inspector, hand packager, and production assembler jobs existed in significant numbers is harmless because the remaining two jobs, masker and table worker, exist in significant numbers. (Dkt. # 13 at 17-18.)

The Ninth Circuit has held that "when a claimant submits evidence for the first time to the Appeals Council, which considers that evidence in denying review of the ALJ's decision, the new evidence is part of the administrative record, which the district court *must* consider in determining whether [or not] the Commissioner's decision is supported by substantial evidence." *Brewes v. Comm'r of SSA*, 682 F.3d 1157, 1159-60 (9th Cir. 2012) (emphasis added). Therefore, this Court must consider whether the ALJ's decision was based on substantial evidence, including VE Moisan's declaration which was submitted to the Appeals Council after the hearing.

The Court rejects Plaintiff's argument that the VE erred simply by virtue of the fact that he provided numbers for groups of jobs rather than for discrete occupations. Courts that have considered this issue have found group designation permissible. *See Houpt v. Berryhill*, No. C17-5251-MJP, 2018 WL 1062745, at *4 (W.D. Wash. Feb. 27, 2018), amended, No. C17-5251-MJP, 2018 WL 3019002 (W.D. Wash. June 18, 2018) ("[o]ccupation is a broad term that includes the collective description of numerous jobs and lists maximum requirements of the jobs as generally performed.") (quoting *Gutierrez v. Colvin*, 844 F.3d 804, 807 (9th Cir. 2016)); *see also Vandevoort v. Berryhill*, Case No. 16-5493DWC, 2017 WL 413203, at *8 (W.D. Wash. Jan. 31, 2017) ("Plaintiff argues the [VE] improperly testified to the aggregate number of assembly jobs available in several discrete occupations… Plaintiff argues this was improper, as 20 C.F.R. § 404.1566(b) requires a [VE] to state the number of available jobs for each individual

occupation, rather than discussing them in aggregate. The Court is not persuaded by Plaintiff's argument.").

While VE Moisan produced job numbers significantly lower than those provided by the VE, he provided numbers for discrete occupations rather than groups of jobs, which was not required. However, VE Moisan's declaration asserts that the numbers provided by the VE for the job groups for inspector and hand packager and assembler production included numbers for jobs that "range from sedentary to heavy and skill levels range from unskilled to highly skilled." *Id.* at 774. It also asserts the same argument for the two sedentary jobs provided by the VE. *Id.* This new information seemingly contradicts the testifying VE's testimony that he was providing evidence about job numbers for groups of jobs that are consistent with the exertional and skill level articulated in the hypothetical question given by the ALJ. Thus, the Court cannot confidently conclude that the ALJ did not err in relying on the testifying VE's testimony in finding that jobs existed in significant numbers in the national economy that Plaintiff can perform. It is possible that even when excluding the numbers for jobs that have a higher exertional or skill level than called for by the ALJ's hypothetical, the jobs identified by the testifying VE may still exist in significant numbers in the national economy. However, that is a factual determination that should be made in the first instance by the ALJ rather than the Court. Accordingly, the Court finds this matter should be remanded for the limited purpose of conducting a new step five evaluation to determine if Plaintiff can perform any job that exists in significant numbers in the national economy. All other parts of the ALJ's decision are affirmed.

\\

\\

## V.     CONCLUSION

For the foregoing reasons, the Commissioner's final decision is **REVERSED** and this case is **REMANDED** for further administrative proceedings at step five.

Dated this 10th day of June, 2019.

_____
MICHELLE L. PETERSON
United States Magistrate Judge